IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MACK INDUSTRIES, INC., | ) | CASE NO. 1:07 CV 2402 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| v. | ) | |
| | ) | |
| EDWARD T. SITARIK | ) | |
| CONTRACTING, INC., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

## I. Factual Background and Procedural History

Most of the facts of this case are not in dispute. Plaintiff/Counterdefendant Mack Industries, Inc. (hereinafter, "Mack") is an Ohio corporation engaged in the business of providing construction materials and services. Doc. 1, at ¶¶ 1, 3; doc. 2, at ¶ 1; doc. 42, at 1. Defendant/Counterclaimant Edward T. Sitarik Contracting, Inc. (hereinafter, "Sitarik") is a Pennsylvania contractor engaged in the business of utility construction. Doc. 1, at ¶ 4; doc. 2, at ¶¶ 4, 15. In or around September 2006, Mack entered into a contract with Sitarik to provide pre-cast concrete manholes for use in the construction of a sanitary sewer system in Cecil Township, Pennsylvania. Doc. 1, at ¶ 1; doc. 2, at ¶ 1. Mack shipped the manholes to Sitarik in Pennsylvania, and Sitarik installed the manholes in the sewer system. Doc. 50, at 1; doc. 52, at 1; doc. 42, Exhibit 2 ["Tudor Dep."], at 43. After the manholes were installed, they began to leak. Tudor Dep., at 37-38. Sitarik notified Mack of the leaking manholes, and various representatives from Mack attempted to correct the problem. Tudor

Dep., at 37-38, 51, 57.

Sitarik did not pay Mack for the manholes, and Mack brought this action against Sitarik for breach of contract. Doc. 1, at ¶¶ 2, 7; doc. 2, at ¶ 7. Sitarik asserted in its answer and counterclaim that it is excused from paying Mack because Mack supplied it with a defective and nonconforming product, and that Sitarik has suffered damages as a result of the leaking manholes. Doc. 2, at ¶¶ 17-25.

Mack filed a motion for summary judgment on Sitarik's counterclaim on October 9, 2009. Doc. 38. On January 7, 2010, Mack also filed a motion for summary judgment on its Complaint. Doc. 49. Sitarik filed briefs in opposition to both motions. Doc. 42, 52. Mack filed a reply brief in support of its motion for judgment on the counterclaim. Doc. 45. On January 20, 2010, Sitarik filed a motion for summary judgment on Mack's Complaint and Sitarik's counterclaim. Doc. 50. Mack filed a brief in opposition to Sitarik's motion. Doc. 51. For the reasons set forth below, the Court GRANTS Mack's motions for summary judgment on its complaint and Sitarik's counterclaim, (doc. 38, 49), and DENIES Sitarik's motion for summary judgment on its counterclaim and Mack's complaint (doc. 50).

## II. Summary Judgment Standard

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing the absence of any such genuine issues of material facts; specifically

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a

genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution might affect the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party pursuant to Federal Rule of Civil Procedure 56(e), which states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. See Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990). The court also must determine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." Anderson, 447 U.S. at 249. In reaching such a determination, however, the court is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. Id. at 248-49. Moreover, the "trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing Frito-Lay Inc. v. Willoughby, 863 F.2d 1029, 1034 (D.C. Circuit 1988).

The Supreme Court has held "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322

### III. Analysis

#### A. Choice of Law

The Court first must address whether Ohio or Pennsylvania law will apply this case. A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941); *Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 738 (6th Cir 1999). This case was brought in the Northern District of Ohio; thus, Ohio's choice of law rules will apply.

Under Ohio law, absent an effective choice of law by the parties, Ohio's choice of law rules require a court to apply the law of the state with the most significant relationship to the contract. Ohio has adopted the test set forth in the Restatement (Second) Conflict of Laws § 188 (1971) as the framework for determining which state has the most significant relationship to the contract. *Gries Sports Ent., Inc. v. Modell*, 15 Ohio St.3d 284, 284, 473 N.E.2d 807 (1984); *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 477, 747 N.E.2d 206 (2001). Section 188 of the Restatement provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties ....
>
> (2) In the absence of an effective choice of law by the parties ... the contacts to be taken into account ... to determine the law applicable to an issue include:
>
>     (a) the place of contracting,
>
>     (b) the place of negotiation of the contract,
>
>     (c) the place of performance,
>
>     (d) the location of the subject matter of the contract, and
>
>     (e) the domicile, residence, nationality, place of incorporation

The Sixth Circuit has stated that these factors provide a "broad framework for the resolution of choice of law issues," and they "need not be given equal weight in every circumstance, nor are they intended to exclusive. They also are relatively elastic, and in some cases equivocal." *International Insurance Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996).

In Sitarik's opposition to Mack's motion for summary judgment on the counterclaim, Sitarik argues that Pennsylvania law applies to this dispute because "all occurrences and events," including the delivery, installation and subsequent repairs of the allegedly defective manholes, as well as the development of the project specifications, took place in Pennsylvania. Doc. 42, at 3-4. Sitarik further notes that Mack has an entity in Pennsylvania to do business, that Mack's representative responsible for the transaction with Sitarik is a Pennsylvania resident, and that Mack sent all proposals, drawings, and "submittals" related to the manholes to Sitarik in Pennsylvania. Id. Although Mack cites some Ohio law in its briefs, Mack does not specifically refute Sitarik's argument that Pennsylvania law should apply to this case, nor does it point to any factors that might weigh in favor of applying Ohio law. Neither party has presented any evidence that the parties effectively agreed to a choice of law. Based on the above, the Court concludes that Pennsylvania law will apply to this dispute.

### B. Sitarik's Counterclaim

Mack has moved for summary judgment on Sitarik's counterclaim arguing that Sitarik has presented no evidence in support of its claim that the manholes were defective. Mack also argues that Sitarik's counterclaim is barred by the economic loss doctrine. In Sitarik's opposition to Mack's motion and in its motion for summary judgment on the counterclaim, Sitarik disputes that the economic loss doctrine, a tort theory, bars its claims for breach of warranty. Sitarik also argues that

because the manholes leaked, it has presented sufficient evidence to support its claims for breach of express and implied warranties under the UCC. Sitarik further argues that it need not prove the cause of the leak in order to go forward with its counterclaim because the burden for that issue is on Mack. Mack argues in reply that Sitarik is not excused from presenting evidence in support of its claims that the product was nonconforming and defective because Sitarik was responsible for all post-delivery handling of the manholes – most notably, their installation.

### 1. Express Warranty

Sitarik claims that Mack breached its express warranty that the manholes it provided would meet or exceed the requirements of the project specifications. According to Sitarik, the requirement that the manholes not leak was among the most important of the project specifications; yet "[d]espite the representation that the manholes would meet the specifications, the manholes provided by Mack were defective and nonconforming in that they leaked." Doc. 42, at 4-5.

To succeed on a claim for breach of express warranty, a plaintiff must demonstrate the existence of an express warranty that is part of the basis of the bargain, and that the product at issue did not conform to the express warranty. *See County of Mercer v. UniLect Corp.*, 612 F.Supp.2d 638, 644 (W.D.Pa. 2009). 13 Pa.C.S.A. § 2313 addresses express warranties. It provides:

Express warranties by the seller are created as follows:

(1)  Any affirmation of fact or promise which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2)  Any description of the good which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3)  Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

13 Pa.C.S.A. § 2313(a).

In support of its claim for breach of express warranty, Sitarik relies on the shop drawings that Mack provided to it in connection with the project's bidding process. Doc. 42, Exhibit 3. Sitarik claims that the shop drawings demonstrate exactly how the manholes would be constructed and points, in particular, to the notation on the drawings that there would be a "flexible watertight connection" between the manhole and the pipe. *See* id. Sitarik further suggests that Mack prepared the shop drawings to conform to the project specifications, and that the specification of a "flexible watertight connection" amounts to an express warranty that the manholes would not leak. Doc. 42, 4-6. To create an express warranty, a seller need not "use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." 13 Pa.C.S.A. § 2313(b). Comment 5 to § 2313 further notes that "[t]echnical specifications, blueprints and the like can afford more exact description than mere language and if made part of the basis of the bargain goods must conform with them."

To the extent that the above language can be construed as an express warranty, it amounts to little more than a warranty that the goods in question will conform to Sitarik's needs – in other words, that the goods will be fit for Sitarik's particular purpose – and/or that the goods will not be defective. This is because Sitarik and Mack did not enter – and indeed could not have entered – into a contract for the sale of a product with a "flexible watertight connection" because Mack did not produce the manholes that are the subject of the instant contract dispute in a condition of being pre-connected to the Cecil Township's pipe system. Instead, the parties entered into a contract for the sale of a product that would be *capable* of making a "flexible watertight connection." The "connection" itself, quite literally, was to be made by Sitarik since, as the parties do not dispute,

Sitarik installed the product that Mack supplied and connected it to the pipe system. Thus, whether or not Mack breached an express warranty, to the extent that the above language can be so viewed, depends on whether or not the product Mack supplied was incapable of making a "flexible watertight connection" – i.e., whether the product was defective or unfit for Sitarik's particular purpose. For the reasons stated below, Sitarik's arguments with respect these issues are without merit.

### 2. Implied Warranties

Sitarik claims that Mack breached the implied warranties of merchantability and fitness for a particular purpose. The purpose of these implied warranties is to "protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992). An implied warranty of fitness for a particular purpose arises "[w]here the seller at the time of contracting has a reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select and or furnish suitable goods." 13 Pa.C.S.A. § 2315. The implied warranty of merchantability is broader; it requires that the goods be "fit for the ordinary purposes for which such goods are used." *See* 13 Pa.C.S.A. § 2314(b)(3); *Altronics of Bethlehem*, 957 F.2d at 1105. In order to establish a breach of either warranty, Sitarik must show that the manholes were defective. *Altronics of Bethlehem*, 957 F.2d at 1105. Mack does not argue that the implied warranties did not arise in this case, only that Sitarik has produced insufficient evidence of a breach.

Sitarik has not presented any direct evidence that the manholes were defective but argues that it may proceed with circumstantial evidence of a defect under the malfunction theory of liability. As the Supreme Court of Pennsylvania stated in *Rogers v. Johnson & Johnson Products, Inc.*, 523

Pa. 176, 182, 565 A.2d 751, 754 (Pa. 1989):

> In most instances the plaintiff will produce direct evidence of the product's defective condition. In some instances, however the plaintiff may not be able to prove the precise nature of the defect in which case reliance may be had on the 'malfunction' theory of product liability. This theory encompasses nothing more than circumstantial evidence of product malfunction

Under the malfunction theory, a plaintiff may "prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction." *Id.*; *Barnish v. KWI Building Co.*, 980 A.2d 535, 541 (Pa. 2009).

Pennsylvania courts have held that a plaintiff pursuing a claim under the malfunction theory "fails to establish a prima facie case only if the plaintiff does not negate evidence of other reasonable, secondary causes or abnormal use that is actually introduced during plaintiff's case in chief." *Dansak v. Cameron Coca-Cola Bottling Co., Inc.*, 703 A.2d 489, 497 (Pa.Super. 1997); *see also Rogers*, 565 A.2d at 755 (holding that a plaintiff may reach the jury if he or she presents "a case-in-chief free of secondary causes"). Under this approach,

> the plaintiff need not negate every theoretically conceivable secondary cause for the accident in question; rather the plaintiff fails to establish a prima facie case only where the offered proof in itself fairly raises the possibility of secondary causes and then fails to negate the inference that more than one cause could account for the accident.

*Walters ex rel. Walters v. General Motors Corp.*, 209 F.Supp.2d 481, 487 (W.D.Pa. 2002) (citing *Dansak*, 703 A.2d at 497). Thus, summary judgment in a malfunction theory case is "not warranted simply because the defendant hypothesizes (or even presents evidence of) reasonable secondary causes;" rather, summary judgment is appropriate only where, "based upon [the plaintiff's] own proof, more than one cause could account for the accident." *Dansak,* 703 A.2d at 497 (internal citations omitted). However, the plaintiff may not depend upon conjecture, speculation or guesswork

to meet the evidentiary demands of the malfunction theory because "[t]he mere fact that an accident happens, even in this enlightened age, does not take the injured plaintiff to the jury." *Id.* (citing *Woodin v. J.C. Penney Co., Inc.*, 427 Pa.Super.488, 629 A.2d 974, 976 (Pa.Super. 1993)).

As an initial matter, the Court notes that Sitarik does not adequately explain why it is necessary to proceed under the malfunction theory in this case. There is no evidence that the manholes in question have been destroyed or that there are other reasons why it is difficult or impossible to establish a defect by direct evidence. Nevertheless, the Court finds that Sitarik has failed to show a defect under the malfunction theory. Sitarik asserts that it has established a defect by presenting a case-in-chief free of abnormal use and other reasonable secondary causes, and that it need not negate Mack's alleged cause of the leak in order to survive summary judgment. Specifically, Sitarik argues that it has presented evidence that "the manholes failed, and in response Mack argues that the product might have failed because of a secondary cause, being Sitarik's own alleged negligent installation. That question cannot be resolved on summary judgment." Doc. 42, at 10. This argument rests entirely on the fact of the failure – i.e., the leak – a fact that is not in dispute and does not tend to explain in any way the *cause* of the failure. Indeed, Sitarik's argument seems to be that the manholes leaked because they were defective, and that the proof of the defect is the leak itself. This circular logic – much like the allegedly defective manholes – does not hold water. While it is true that Sitarik need not eliminate every other conceivable cause of the leaky manholes in order to survive summary judgment on its counterclaim, the malfunction theory does not shift away from Sitarik all of its evidentiary duties, and Sitarik has not presented any evidence at all regarding why the manholes leaked. Based on Sitarik's proof – i.e., that the manholes leaked – certainly more than one cause could have accounted for the leaking, including Sitarik's alleged

negligent installation or something else altogether. Thus, the Court must GRANT Mack's motion for summary judgment on Sitarik's counterclaim and DENY Sitarik's motion for summary judgment on its counterclaim.

### 3. Economic Loss Doctrine

Mack further argues that Sitarik's counterclaim is barred by the economic loss doctrine. Doc. 45, at 10-13. Although the Court must deny Sitarik's breach of warranty counterclaim for the reasons stated above, the Court notes that the economic loss doctrine does not provide an independent basis for denying Sitarik's counterclaim in this case. Under the economic loss doctrine as adopted in Pennsylvania, "negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself." *REM Coal Co. v. Clark Equipment Co.*, 386 Pa.Super. 401, 412-13, 563 A.2d 128, 134 (1989) (adopting the doctrine as set forth in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986)). The purpose of the doctrine is to preserve "the important distinctions between tort and contractual theories, including their differing objectives," by preventing from proceeding tort-based claims that allege only economic losses. *See REM Coal*, 563 A.2d at 128; *DeFebo v. Anderson Windows, Inc.*, 2009 WL 3150390 at *9 (E.D.Pa. Sept. 24, 2009). Underpinning the doctrine is the notion that "*contract theories such as breach of warranty* are specifically aimed at and perfectly suited to providing complete redress in cases involving ... economic losses." *REM Coal*, 563 A.2d at 129 (emphasis added). As the *REM Coal* court further explained, "such losses are based upon and flow from the purchaser's loss of the benefit of his bargain and his disappointed expectations as to the product he purchased. Thus, the harm sought to be redressed is precisely that which a warranty action does redress." *Id.* at 129. Since the point of

the doctrine is to avoid imposing additional tort liability where a plaintiff's alleged entitlement stems only from a contract, the doctrine has no applicability to contract-based claims such as claims for breach of warranty.  *See DeFebo*, 2009 WL 3150390 at *9; *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002).

In this case, Sitarik's counterclaim seeks redress for the economic losses it sustained as a result of the allegedly defective manholes Mack provided.  Sitarik claims that, in selling Sitarik the allegedly defective manholes, Mack breached the implied warranties of merchantability and fitness for a particular purpose, as well as an express warranty that the manholes would not leak. These claims sounds in contract, not tort; as such, the Court declines to apply the economic loss doctrine in this case because doing so would run counter to its purpose.  *See DeFebo*, 2009 WL 3150390.

### C.  Mack's complaint

Mack has moved for summary judgment on its complaint for breach of contract.  Under Pennsylvania law, a plaintiff must prove the following in order to establish a claim for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003).

The parties in this case do not dispute the existence of a contract or that the contract was for the sale of manholes.  Doc. 1, at ¶ 1; doc. 2, at ¶ 1.  The parties also do not dispute that Sitarik did not pay for the manholes.  Doc. 1, at ¶¶ 2, 7; doc. 2, at ¶ 7.  Mack has attached to its motion invoices and an affidavit of Mack's Vice President and Credit Manager, Dave Naftzger, reflecting that Mack has suffered $271,266.41 in damages as a result of Sitarik's failure to pay for the manholes.  Doc. 49, at 9-10, 12.  Thus, Mack has made out a prima facie case for breach of contract.

Sitarik alleges that it is excused from paying for the manholes because the manholes were defective and nonconforming in that they leaked.  However, for the reasons stated above, the Court finds that Sitarik's evidence is insufficient to show that there is a genuine issue of material fact regarding whether or not the manholes were defective or not fit for Sitarik's particular purpose. Sitarik does not allege any other reasons why Mack's claim should be denied or suggest any reasons why Mack's damages should be reduced.  Accordingly, the Court finds that Mack has prevailed on its claim for breach of contract and that it is entitled to $271,266.41  in damages.

### IV.  Conclusion

For the foregoing reasons, the Court GRANTS Mack's motions for summary judgment on its complaint and Sitarik's counterclaim, (doc. 38, 49), and DENIES Sitarik's motion for summary judgment on its counterclaim and Mack's complaint (doc. 50).  The Court further orders Sitarik to pay Mack $271,266.41 in damages.

IT IS SO ORDERED.

    s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: March 26, 2010.